UNITED STATES of America, Plaintiff,

v.

ONE 1982 OLDSMOBILE CUTLASS
VD # 1GAM47A4CM453310,
Defendant.

No. CIV 87–2297–R.

United States District Court,
W.D. Oklahoma.

April 4, 1989.

William S. Price, U.S. Atty., and Mary M. Smith, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

Carole J. Brown, Lawton, Okl., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are cross motions for summary judgment in this *in rem* action for forfeiture brought pursuant to 21 U.S. C. § 881(a)(4). The parties have stipulated to all of the material facts. *See* Stipulation of Facts filed February 1, 1989. The motions raise only issues of law based on the undisputed facts stipulated by the parties.

Plaintiff asserts that Claimant has failed to carry its burden of establishing a defense to forfeiture and, moreover, that Claimant lacks standing to even contest the forfeiture action because Claimant had no possessory interest in the automobile prior to its seizure by Plaintiff and could not acquire a possessory interest after seizure. Integral to Plaintiff's latter argument are its assertions that a lien against property does not entitle the lienholder to possession; that once property is seized, a recognizable possessory interest in property cannot be obtained; and that Claimant's state court foreclosure action after the property had been seized by the Government and after Claimant had notice of the seizure and forfeiture proceeding is void. Alternatively, Plaintiff asserts that the Claimant's interest in the vehicle is limited to $700.74

because the certificate of title provision of Oklahoma's Motor Vehicle License and Registration Act, Okla. Stat. tit. 47, § 23.2b (Supp.1982), and not Okla. Stat. tit. 12A, § 9–312(7), controls perfection of a security interest in a motor vehicle and under such provision Claimant's interest was perfected only to that extent. In any event, Plaintiff posits, it is clear that Claimant did not intend for its subsequent promissory notes to be secured by the Defendant vehicle. As a back-stop to this argument, Plaintiff urges that Claimant's assertion of rights to foreclose on its secured and unsecured debts, utilizing state law and state courts, is in direct conflict with 21 U.S.C. § 881 and is therefore pre-empted by federal law pursuant to the Supremacy Clause of the United States Constitution. Finally, Plaintiff asserts that because Claimant has failed to follow the remission procedure the Court is without jurisdiction to order return of property under 19 U.S.C. § 1618 and has no authority to grant the declaratory relief sought by the Claimant in a manner which is binding on the Attorney General.

In support of its cross motion, Claimant first argues that it has standing to assert an "innocent owner's defense" to forfeiture. This "defense" is founded on the suggestion that the forfeiture statute as applied to the property of an owner who is "innocent of crime and who had done all that reasonably could be expected of him to prevent misuse of his property," *United States v. One 1976 Lincoln Mark IV*, 462 F.Supp. 1383, 1390 (W.D.Pa.1979), would be unconstitutional as a deprivation of property without due process. Thus, an innocent owner is constitutionally exempt from the operation of the forfeiture statutes. Claimant asserts that since there is no evidence showing that it was ever aware of what Mr. Patel was doing or of suspicious circumstances which would trigger an affirmative duty on Claimant's part to prevent its property from being used illegally, it is entitled to assert the innocent owner's defense, provided that it has an ownership interest. Claimant asserts that as a holder of a lien on the Defendant vehicle it is an "owner" within the meaning of 21 U.S.C.

§ 881(a)(4), citing *United States v. All That Tract and Parcel of Land: 2306 North Eiffel Court*, 602 F.Supp. 307, 312 (N.D.Ga.1985) (interpreting "owner" as used in Section 881(a)(6) based upon legislative history); *United States v. A Parcel of Real Property*, 650 F.Supp. 1534, 1541 (E.D.La.1987) (*citing United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291 (5th Cir.1984)); *United States v. One Parcel of Real Estate Property*, 660 F.Supp. 483 (S.D.Miss.1987); and *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232 (D.Md.1987). Claimant also notes that the term "owner" as used in another forfeiture statute, 21 U.S.C. § 853, has been interpreted by one court to include unsecured creditors, *citing United States v. Reckmeyer*, 628 F.Supp. 616 (E.D.Va.1986).

Claimant next asserts that its contractual security interest in the Defendant vehicle based not only on the security agreement and note dated July 27, 1983 but on the notes executed on April 27, 1984 and December 5, 1984 was valid and existing before the illegal act of Patel on January 6, 1984, relying on Okla. Stat. tit. 12A, § 9–204(3) and Okla. Stat. tit. 12A, § 9–312 to assert that Claimant had a perfected security interest in Defendant's vehicle securing the amount due on all three notes before Patel's illegal act. Claimant reasons therefrom that its security interest has priority over the Plaintiff's claim, which it analogizes to that of a mere intervening lien creditor, citing Okla. Stat. tit. 12A, § 9–301(3) & (4). Claimant contends that pursuant to the terms of its Installment Note, Disclosure Statement & Security Agreement of July 27, 1983, Claimant's perfected security interest has priority over the Government's lien, citing Okla. Stat. tit. 12A, § 9–312(5) & (7) and *First National Bank and Trust Co. of Norman, Okla. v. Security National Bank and Trust Co. of Norman, Okla.*, 676 P.2d 837 (Okla.1984).

In an alternative argument independent of that based on the existence of a perfected security interest, Claimant asserts that it had a valid possessory interest in the Defendant vehicle based on the terms of its

contract with Patel, which in relevant part provided:

Events of Default

....

2. Any statement or representation made or furnished to you proves to be false;

3. The property is lost, stolen, receives substantial damage, sold, or any lien or encumbrance is placed on the property, or any seizure or attachment of the property;

....

....

6. The use of the property in an unlawful way;

....

8. You believe.... or feel that the property is in jeopardy.

Installment Note, Disclosure Statement & Security Agreement (Exhibit "A" to Stipulation of Facts)

Claimant says that Mr. Patel's statement on the front of the contract to the effect that the property covered by the Security Agreement was to be used primarily for "Personal, Family or Household purposes" as opposed to for business was a false statement. Moreover, Claimant asserts that the vehicle was used in an unlawful manner and seized and if Claimant had known what Patel was doing, it would have believed that its property was in jeopardy. Thus, Claimant asserts that because of these events of default it had an immediate right to possession of the vehicle pursuant to the terms of its contract with Patel which provided that upon default Claimant could repossess the property. *See* Installment Note, Disclosure Statement & Security Agreement (Exhibit "A" to Stipulation of Facts) at "Remedies," ¶ 4.

Next Claimant asserts, contrary to Plaintiff's position, that this Court has jurisdiction to award Claimant the vehicle if it concludes that "the subject vehicle does not fall within the forfeiture statute." What Claimant is really suggesting is that the Court can declare that Claimant's interest in the vehicle cannot be forfeited pursuant to the forfeiture statute because application of the forfeiture statute under these circumstances would be an unconstitutional denial of Claimant's interest in the vehicle without due process.

Finally, Claimant asserts for the first time in this motion that the Plaintiff's excessive delay in seizure (five months), notice to Claimant of the seizure (two months), institution of forfeiture proceedings (17 months), and notice to the Claimant of the forfeiture proceeding (3 months), or a total time period of twenty-three months elapsed from the time of the illegal act to the time Claimant received notice of the forfeiture proceeding, was excessive and constitutes a violation of Claimant's due process rights. Claimant contends that the vehicle has depreciated significantly during this period of delay.

*The Nature of Claimant's Interest in the Defendant Vehicle*

The registered owner of the Defendant vehicle is Parbhubhai Patel. On July 27, 1983, Patel obtained a loan from Claimant bank to purchase the vehicle. On that date, he executed an "Installment Note, Disclosure Statement and Security Agreement" in favor of Claimant bank. *See* Stipulation of Facts at ¶ 4 and Exhibit "A" thereto. The Security Agreement provided that it would "also secure any other or future debts of mine to you and will include any after-acquired-Property." Exhibit "A" to Stipulation. On September 1, 1983, Claimant filed a lien entry form with the Oklahoma Tax Commission. Stipulation at ¶ 5 & Exhibit "B" thereto. On April 27, 1984 and December 5, 1984, Patel obtained two additional loans from Claimant. *Id.* at ¶ 6 & Exhibit "J" & "D" thereto. Each of the security agreements signed by Patel in connection with those loans lists the security as "FS." At the time Patel made application for the April 27, 1984 loan, Patel provided Claimant with financial statements for the D & R Motel and a personal financial statement reflecting as assets, among other things, a one-half interest in the D & R Motel and two automobiles. *See* Exhibit "E" to Stipulation. After the FBI seized the Defendant vehicle on June 28, 1986, Patel's notes to the Claimant bank

went into default. Security charged off $700.74 on the July 27, 1983 note (vehicle purchase-money note) $8,160.14 on the April 27, 1984 note, and $4,000 on the December 5, 1984 note. Stipulation at ¶ 8 & Exhibits "F" and "G" thereto.

Claimant was notified of the seizure of the automobile on August 21, 1986. Claimant then filed an action in state court on August 28, 1986 for judgment on the notes. Stipulation at ¶ 10. The United States was not made a party to the action nor was the FBI notified of the action until September 12, 1986. *Id.* On October 21, 1986, default judgment was entered in favor of Claimant and against Patel in the amount of $15,-224.24 plus an attorney's fee and costs and declaring that Claimant has a "special ownership interest in" Defendant vehicle and "is entitled to immediate possession of said property for sale" to satisfy the judgment debt. Stipulation at ¶ 12 & Exhibit "H."

The parties dispute the extent to which Claimant's security interest was perfected at the time of seizure, the Claimant apparently conceding that a claimant cannot obtain a recognizable possessory interest in property once it has been seized, *see, e.g., United States v. One 1967 Chris–Craft 27 Foot Fiber Glass Boat,* 423 F.2d 1293, 1294 (5th Cir.1970), and placing no reliance upon its state court foreclosure action to establish a possessory interest in the Defendant vehicle.[1] Claimant asserts that it had a perfected security interest in the vehicle securing not only the loan made on July 27, 1983 but also securing the loans made on April 27, 1984 and December 5, 1984 because the original security agreement contained a future advances clause. Thus, it is Claimant's position that its lien entry

form filed September 1, 1983 perfected its security interest in the future advances by operation of Okla. Stat. tit. 12A, § 9–204(3). Plaintiff asserts that a security interest in future advances could not be perfected except by again filing lien entry forms at the time the latter two loans were made because Oklahoma's Motor Vehicle License and Registration Act provision, Okla. Stat. tit. 47, § 23.2b (Supp.1982), was the exclusive means of perfecting security interests in vehicles, citing *In re Chief Freight Lines Co.,* 37 B.R. 436, 439 (Bankr.N.D. Okla.1984); *In re Haning,* 35 B.R. 242, 246 (Bankr.N.D.Okla.1983); *In re Hughen,* 38 B.R. 13, 15 (Bankr.W.D.Okla.1983); *McConnico v. General Motors Acceptance Corp.,* 611 P.2d 232, 234 (Okla.1980) and *In re Manufacturers Credit Corp.,* 441 F.2d 1313 (3rd Cir.1971). Plaintiff's position is that Okla. Stat. tit. 47, § 23.2b does not allow for operation of Okla. Stat. tit. 12A, § 9–204(3) and Okla. Stat. tit. 12A, § 9–312(7) pertaining to perfection of future advances.

At the time Claimant filed its lien entry form, Section 23.2b of Title 47 of the Oklahoma Statutes provided in relevant part as follows:

> Except for a security interest in vehicles held by a dealer for sale or lease, as defined in Section 1–112 of this title, a security interest, as defined in Section 1–201 of Title 12A of the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form, which shall be upon a form prescribed by the Commission, and the existing certificate of title, if any, or application for a certificate of

---

1. The Court understands Plaintiff's pre-emption argument, *see* Plaintiff's Brief in Support of Summary Judgment at pp. 13–14 and Response to Claimant's Motion for Summary Judgment at pp. 8–10, to relate only to *acquisition* of a property interest *after* the illegal use. *United States v. Miscellaneous Jewelry,* 667 F.Supp. 232, 236 (D.Md.1987); *United States v. One Piece of Real Estate, Described in Part as: 1314 Whiterock and Improvements, San Antonio, Bexar County, Texas,* 571 F.Supp. 723, 725 (W.D.Tex.1983); *United States v. One 1975 Chevrolet K–5 Blazer, VIN CKY185 F135794,* 495 F.Supp. 737, 744 (W.D. Mich.1980) and cases cited therein. If the

Plaintiff is arguing that 21 U.S.C. § 881 operates to divest any innocent owners' property rights which were vested before seizure and pre-empts any state law which created such vested property rights, Plaintiff's argument must give way to a proper Fifth Amendment challenge. *Cf. Rodrock v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir.1981), *aff'd on other grounds, sub nom. United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (bankruptcy code provision which would operate to avoid secured creditors' interests which came into being pre-enactment would violate Fifth Amendment Takings Clause).

title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents. For purposes of this section, the term "vehicle" shall not include special mobilized machinery, machinery used in highway construction or road material construction and rubber-tired road construction vehicles including rubber-tired road construction vehicles including rubber-tired cranes. The filing provisions of Title 12A of the Oklahoma Statutes, including, but not limited to, Section 9–302, shall not be applicable to perfection of security interests in vehicles as to which a certificate of title may be properly issued by the Tax Commission, except as to vehicles held by a dealer for sale or lease and except as provided in subsection D of this section.

> Okla. Stat. tit. 47, § 23.2b(A)(1) (Supp. 1982).[2]

This statute makes it clear that the "filing provisions" of Article 9 of the Uniform Commercial Code, Okla. Stat. tit. 12A, § 9–101 et seq., do not apply to security interests in motor vehicles but in all other respects Article 9 of the Uniform Commercial Code, Okla. Stat. tit. 12A, § 9–101 et seq., does apply. Therefore, the issue the Court must address is whether Okla. Stat. tit. 12A, § 9–204(3) and/or Okla. Stat. tit. 12A, § 9–312(7) are "filing provisions."

■ The Oklahoma Supreme Court has not addressed this issue but this Court is persuaded by its treatment of a similar issue under this statute that the Oklahoma Supreme Court would conclude that Sections 9–204(3) and 9–312(7) are not "filing provisions" and that it is unnecessary to file additional lien entry forms to perfect security interests in future advances if a security interest in a vehicle is perfected by the proper filing of a lien entry form and the security agreement granting that interest contains a future advances clause.

In the case of In re Boyd, 658 P.2d 470 (Okla.1983), the Oklahoma Supreme Court construed Okla. Stat. tit. 47, § 23.2b and Okla. Stat. tit. 12A, § 9–306(3) (regarding when a security interest in proceeds of collateral is perfected) harmoniously:

> Where the creditor files a lien entry form with the Oklahoma Tax Commission on the form prescribed by the Commission covering a vehicle covered by 47 O.S. 1981, § 23.2b, such filing perfects a security interest in the "proceeds" of the collateral, where the security agreement covering the property, specifies that there shall be a security interest in proceeds of the property.

> 658 P.2d at 475.

The lien entry form provides no place for information pertaining to the amount of debt secured, or whether future advances are secured. Thus, to hold that a secured creditor must file a new lien entry form each time it makes another loan to be secured by the vehicle would not further the purpose sought to be served by Section 23.2b—to provide a central filing place through which to impart notice of a security interest, see 658 P.2d at 475 and would subvert the purpose of the UCC provisions —to provide notice to interested parties of some security interest, see 658 P.2d at 474–475. If a secured party were required to file a new lien entry form each time it made a "future advance," it would still be necessary for an interested party to consult with the secured party or see the security agreement to ascertain the extent of the secured party's interest in the vehicle or the amount of debt secured thereby. To construe the two statutes in such a manner would be contrary to Oklahoma rules of statutory construction requiring that "legislative acts ... be construed ... to reconcile different provisions and render them harmonious and give intelligent effect to each." In re Boyd, 658 P.2d at 475, quoting Eason Oil Co. v. Corporation Commission, 535 P.2d 283, Syllabus by the Court at 2 (Okla.1975).

---

2. This statute, as later amended in 1984, was repealed and replaced by Okla. Stat. tit. 47,

§ 1110 effective July 1, 1985. See 1985 Okla. Sess.Laws ch. 179, §§ 13 & 99.

Moreover, Sections 9–204(3) and 9–312(7) are no more "filing provisions" than is Section 9–306(3), inasmuch as they effectively provide that perfection of a security interest *as otherwise provided by law* serves to *also* perfect a security interest in future advances or proceeds of collateral effective as of the date the original interest is deemed perfected.

In an alternative argument to support its assertion that Claimant does not have a security interest in the Defendant vehicle to the extent of the latter two loans, Plaintiff argues that the description of collateral contained therein, "FS," is not adequate, citing, *inter alia*, Okla. Stat. tit. 12A, § 9–203. Plaintiff contends that the designation "FS" contained therein refers to a "financing statement" (Plaintiff means the *financial statements* of Mr. Patel) and that the description of "two automobiles" contained in these statements is legally insufficient. Moreover, Plaintiff contends that the security agreements executed in connection with the 1984 loans do not indicate any intention of the parties that the Defendant vehicle serve as security for these loans.

Plaintiff's arguments are unavailing. The description of collateral that is pertinent to whether Claimant obtained a valid security interest in the collateral in connection with the extensions of credit in 1984 is that contained in the security agreement dated July 27, 1983 and the parties' intent that is relevant to this issue is that existing at the time the security agreement dated July 27, 1983 was executed. *See Security National Bank and Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340, 1345–46 (Okla.1980). The 1983 security agreement contains an adequate description of the collateral and the agreement states that the security interest therein "will also secure any other or future debts of mine to you,"

unambiguously evidencing the parties' intent to extend a security interest in the collateral to any other future debt which necessarily includes the 1984 loans. *Id.* Plaintiff does not argue that the 1984 loans are of a different class than the loan made in 1983, *see id; see also Continental Resources Corp. v. Federal Deposit Insurance Corp. (In re Continental Resources Corp.)*, 799 F.2d 622, 626–27 (10th Cir. 1986), so that issue is not before the Court.

### Standing

■ To the extent a possessory or ownership interest pre-seizure is necessary for standing to contest forfeiture,[3] Claimant contends that it had acquired a possessory interest at the time or shortly before Patel first engaged in unlawful activity by virtue of the parties' security agreement dated July 27, 1983, the relevant provisions of which are quoted above. To the extent a possessory or ownership interest is necessary for standing to contest forfeiture, however, the Court concludes that Claimant may not utilize the asserted contractually-created possessory interest to obtain standing for the same reason that Claimant Schneider in *United States v. One 1984 Mercedes Benz Model No. 380SE VIN WB1260321A011901*, 836 F.2d 268 (6th Cir. 1988) did not have standing to assert an innocent owner's defense. In that case,

> Schneider became the owner [of the vehicle] by virtue of Biebau's clear violation of the customs laws. The violation caused her ownership. Had Biebau never broken the conditions by which he imported the car, Schneider would never have owned it.

> *United States v. One 1984 Mercedes Benz Model No. 380SE*, 836 F.2d at 270.

---

**3.** Most cases addressing the requisite interest necessary for standing to contest forfeiture under Section 881(a)(4) hold that an ownership or possessory interest, with the attendant characteristics of dominion and control over the *res* is necessary for standing. *See United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28 (8th Cir.1979), *cert. denied sub nom. Stumpff v. United States*, 454 U.S. 1143, 102

S.Ct. 1002, 71 L.Ed.2d 294 (1982); *United States v. One 1977 36 Foot Cigarette Ocean Racer*, 624 F.Supp. 290, 294 (S.D.Fla.1985); *United States v. One Porsche Coupe Auto*, 364 F.Supp. 745, 748 (E.D.Pa.1973). *See also United States v. $38,-000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir.1987) (ownership or possessory interest, such as that of bailee, necessary for Article III, "case or controversy," standing).

In this case Claimant's claim of a possessory interest arises by virtue of Mr. Patel's illegal drug activity or "business." Mr. Patel's illegal drug business is the only basis for an inference that Patel's statement that the property (vehicle) was to be used primarily for "personal, family or household purposes" proved to be false and Patel's unlawful activity is the only basis for the other "defaults" which Claimant asserts give it a possessory interest in the vehicle.

### Standing to Contest Forfeiture as a Secured Party

■ In order to contest forfeiture, Claimant must establish both Article III and statutory standing. *See United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543–1545 (11th Cir.1987). In this case, Claimant all but concedes that it does not have statutory standing. The relevant statute provides as follows:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2), except that—

(A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions

of this section unless it shall appear that the owner or other person in charge of such conveyance was a consenting party or privy to a violation of this subchapter or subchapter II of this chapter; and

(B) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State.

21 U.S.C. § 881(a)(4) (1981).

Claimant does not allege or argue that it is the "owner or other person in charge" of a common carrier or that it was an "owner" of the Defendant vehicle within the meaning of subsection B, much less that Patel was unlawfully in the possession of the car at the time that the criminal violation occurred. Thus, the Court need not belabor the difference between the language of Section 881(a)(4), prior to its amendment effective 120 days after November 18, 1988, *see* Pub.L. No. 100–690, § 6074, 102 Stat. 4324, *reprinted in* U.S.Code Cong. & Admin.News, 100th Cong., 2d. Sess. (No. 10–Jan.1989), and the language of, for example, Section 881(a)(6) and (a)(7)[4] or the different interpretation placed upon the term "owner" as used in the latter subsections based upon the legislative history of those subsections[5] because Claimant is not

---

**4.** Subsections (a)(6) and (a)(7) both provide that no property subject to forfeiture under those provisions

shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) & (a)(7).

The statutory exception in these provisions is broader than the Constitutional "innocent owner's defense," *see* infra, and is afforded not only to *the* owner but to *an* owner to the extent of his interest, thus recognizing that more than one person may have an ownership interest.

Section 881(a)(4) has now been amended to provide as a third exception to forfeiture that no conveyance shall be forfeited under this paragraph to the extent of an interest of an

owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.

21 U.S.C. § 881(a)(4)(C) (1989).

This amendment also provides an exception or defense to forfeiture under Section 881(a)(4) broader than the Constitutional "innocent owner's defense" and affords it *to the extent of* an *owner's* interest.

**5.** The legislative history of 21 U.S.C. § 881(a)(6) indicates that "the term 'owner' should be broadly construed to encompass any person with a legal or equitable interest in the property seized." *United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 293 (1984), *citing* Joint Explanatory Statement of Titles II and III, 1978 U.S.Code Cong. & Ad.News 9496, 9522–23. The

in any event asserting that Patel was unlawfully in possession of the Defendant vehicle at the time the criminal act was committed. Rather, Claimant is urging that it has standing to assert a Constitutional innocent owner's defense and that Claimant's interest in the property is sufficient for standing to assert *this* defense. Although Claimant unavailingly relies on cases interpreting the meaning of "owner" as used in Section 881(a)(6)[6] and argues therefrom that "it would be incongruous for the judicially-made Constitutional exception to forfeiture law for 'innocent owners' to have a different meaning than the congressionally-created exception in Section 881(a)(6)" Claimant's Brief in Support of Summary Judgment at p. 6, implicit in Claimant's argument is the assertion that to interpret the statute so as to preclude a party having a security interest in the Defendant property from contesting forfeiture would amount to a deprivation of property without due process.

Thus, although Claimant does not have statutory standing, it is nevertheless necessary for the Court to examine the issue of Article III standing to assert a Constitutional-based innocent owner's defense.

### *Article III Standing*

[4] Standing to assert a Fifth Amendment-based defense to forfeiture must first necessarily depend on whether one has a "property interest" within the meaning of the Fifth Amendment. The Fifth Amendment guarantees due process to those deprived of life, liberty or property. U.S. Const. amend. V. Property rights are not creatures of the Constitution. " 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Parratt v. Taylor*, 451 U.S. 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 L.Ed.2d 420, 425 n. 1 (1981) (*quoting Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)). The Due Process Clause of the Fourteenth Amendment "has been read broadly to extend protection to 'any significant property interest,' " *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 573 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971)), and to include within its guarantee property rights less substantial than full legal title. *Fuentes*, 407 U.S. at 86–87, 92 S.Ct. at 1997, 32 L.Ed.2d at 573. The Court sees no reason why "property" within the meaning of the Fifth Amendment Due Process Clause should not be interpreted equally as broadly. *Cf. United States v. Security Industrial Bank*, 459 U.S. 70, 75–78, 103 S.Ct. 407, 411–412, 74 L.Ed.2d 235, 241–42 (1982) (strongly suggesting that a secured party's interest is "property" within the meaning of the Fifth Amendment Takings Clause); *Armstrong v. United States*, 364 U.S. 40, 44–45, 80 S.Ct. 1563, 1566–67, 4 L.Ed.2d 1554, 1558–59 (1960) (materialmen's liens arising under Maine law are "property" protected by Fifth Amendment

---

legislative history for Section 881(a)(4), *see* 1970 U.S.Code Cong. & Ad.News 4566–4660, contains no such suggestion and indicates that only "the owner" of a conveyance who "did not have knowledge of activities in which the conveyance was used or where the conveyance was unlawfully in possession of the person who so used it," *id.* at 4623–24, is exempted from forfeiture under that section.

Courts have refused to rely on the legislative history of Section 881(a)(6) to expand the definition of "owner" as used in other forfeiture statutes. *See, e.g., United States v. One 18th Century Monstrance*, 797 F.2d 1370, 1376 (5th Cir.1986) (Congress did not amend 18 U.S.C. § 545 in a manner parallel to 21 U.S.C. § 881(a)(6) so as to expand the definition of an

"owner" who could contest forfeiture). *See also United States v. One BMW 318I, VIN WBAAC8401 FD685314*, 696 F.Supp. 336, 340 (N.D.Ill.1988) in which Judge Shadur recently said:

There is really no room for the insertion of the *Calero–Toledo* defense into Section 881(a)(4) as a matter of statutory construction. Congress' decision to exempt the innocent owner from forfeiture of the types of property described in Sections 881(a)(6) and 881(a)(7), while omitting that protection under Section 881(A)(4) must be viewed as a deliberate choice.

696 F.Supp. at 340.

**6.** See notes 364, *supra.*

Takings Clause and suggesting that they are protected by the Fifth Amendment Due Process Clause also); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 594–95 55 S.Ct. 854, 865–66, 79 L.Ed. 1593, 1607 (1935) (mortgagee's rights in property held as security are property under Kentucky law, protected by Fifth Amendment Takings Clause). And the Court has little doubt that a perfected security interest is a property right recognized by Oklahoma law. *See, e.g.,* Okla. Stat. tit. 12A, §§ 9–312, 9–501, 9–503 & 9–504. *Cf. Binding–Stevens Seed Co. v. Local Building & Loan Ass'n*, 172 Okla. 390, 45 P.2d 132 (1935) (mortgagee's interest is "property" protected by Okla. Const. art. 2, § 7 (due process clause)). However, the Court deems it unnecessary to engage in extended discourse of the dimensions of a perfected security interest under Oklahoma law because the Court concludes that Claimant's Constitutional claim or Constitutionally-based defense is not ripe and thus that Claimant lacks standing to assert same in this forfeiture proceeding.

The Constitutionally based "innocent owner's defense" which has been recognized by some courts, *see United States v. One 1981 Datsun 280ZX VIN: JN1HZO4S4BX407742*, 644 F.Supp. 1280, 1285–86 (E.D.Pa.1986) (collecting cases), and apparently by the Tenth Circuit in the context of application of another forfeiture statute, *see United States v. One 1957 Rockwell Aero Commander 680 Aircraft, VIN No. 680–515–186, FAA No. N6247D*, 671 F.2d 414, 417–18 (10th Cir.1982), derives from dicta in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) in which the United States Supreme Court said:

This is not to say, however, that the "broad sweep" of forfeiture statutes remarked in Coin & Currency would not, in other circumstances, give rise to serious constitutional questions. Mr. Chief Justice Marshall intimated as much over a century and a half ago in observing that "a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." *Peisch v. Ware*, 4 Cranch 347, 363, 2 L Ed 643 (1808). It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. See id., at 364 2 L Ed 643; *Goldsmith–Grant Co. v. United States*, 254 US, [505] at 512, [41 S.Ct. 189, 191] 65 L Ed 376; *United States v. One Ford Coupe Automobile*, 272 US, [321] at 333, [47 S.Ct. 154, 158], 71 L Ed 279, 47 ALR 1025; *Van Oster v. Kansas, supra,* [272 U.S. 465] at 467, [47 S.Ct. 133, 134] 71 L Ed 354, 47 ALR 1044. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. *Cf. Armstrong v. United States*, 364 US 40, 49, 4 L Ed 2d 1554, 80 S Ct 1563 [1569] (1960).

416 U.S. at 688–89, 94 S.Ct. at 2094, 40 L.Ed.2d at 471–72.

The constitutional claim adverted to is clearly one for denial of substantive due process under the Fifth Amendment. The Court thus assumes that the "innocent owner's defense" which Claimant seeks to assert herein is predicated on substantive rather than procedural due process. An "innocent owner defense" which proceeds from the *Calero–Toledo* dicta concerning a constitutional *claim* necessarily rests on the assumption that failure to recognize such a defense would render a forfeiture statute as applied to an innocent owner unconstitutional under Fifth Amendment substantive due process analysis and that recognition of the defense is necessary to avoid the constitutional infirmity.

However, recognition of an "innocent owner's defense" broader than that included within Section 881(a)(4) is unnecessary to avoid constitutional infirmity. This is clear from the decision of the Supreme Court in *United States v. U.S. Coin &*

**1552**

*Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971):

> [W]e would first have to be satisfied that a forfeiture statute, with such a broad sweep, did not raise serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be "deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." .... And this Court in the past has recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. *See, e.g., Goldsmith–Grant Co. v. United States,* 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921). *Cf. United States v. One Ford Coach,* 307 U.S. 219, 236–37, 59 S.Ct. 861, [869–70] 83 L.Ed. 1249, 1260, 1261 (1939).
>
> We need not pursue that inquiry once again, however, because ... *the broad language of § 7302 cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings.* An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the "forfeiture was incurred without willful negligence or without any intention on the part of the petitioner ... to violate the law.... 19 U.S.C. § 1618. Upon this showing, the Secretary is authorized to return the seized property "upon such terms and conditions as he deems reasonable and just." It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. *United States v. Edwards,* 368 F.2d 722 (4th Cir.1966); *Cotonificio Bustese, S.A. v. Morgenthau,* 74 App. D.C. 13, 121 F.2d 884 (1941) (Rutledge, J.).

401 U.S. at 720–21, 91 S.Ct. at 1044, 28 L.Ed.2d at 438–39 (emphasis added).

So, too, in determining whether Claimant has standing to assert an innocent owner's defense herein which is logically dependent on a claim that disallowing such a defense would constitute a denial of property without due process, this Court must consider Section 881(a)(4) in conjunction with the statutory remission and mitigation procedures of 19 U.S.C. § 1618. *See* 21 U.S.C. § 881(d). This procedure permits *"any person interested in"* property seized to "seek remission or mitigation of forfeiture" and provides that such remission or mitigation may be granted where the "forfeiture was incurred without any willful negligence or any intention on the part of the petitioner ... to violate the law." 19 U.S.C. § 1618. The regulations promulgated pursuant to the statute make it clear that the remission procedure applies to lienholders such as the Plaintiff herein. *See* 19 C.F.R. § 171.13. *See also* 21 C.F.R. § 1316.79; 28 C.F.R. § 9.1 *et seq. Accord, Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. at 689 n. 27, 94 S.Ct. at 2095 n. 27, 40 L.Ed.2d at 689 n. 27. Unless and until Claimant has pursued the remission process and obtained a decision from the Attorney General, Claimant's claim for a substantive due process violation absent recognition of an innocent owner's defense in this forfeiture proceeding is not ripe. *Cf. Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 199–200, 105 S.Ct. 3108, 3123, 87 L.Ed.2d 126, 146–47 (1985) (because respondent had not applied for variances, whether effect of regulations deprived it of substantive due process under the Fourteenth Amendment could not be determined and respondent's claim was not ripe); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393, 407–08 (1984) (no constitutional injury occurs unless state fails to provide adequate post-deprivation remedy for property loss); *Landmark Land Company of Oklahoma v. Buchanan,* Nos. 85–2458 & 85–2538, —— F.2d ——, ——–—— (10th Cir. Nov. 30, 1988) (until extent of local governmental action is known, Fourteenth Amendment substantive due process claim is not ripe). Claimant cannot claim a constitutional injury based on the inability to assert an innocent owner's defense in a forfeiture action pursuant to Section 881(a)(4) or contend that application of that statute to it deprives it

of property in violation of its substantive due process rights where an adjunctive statute provides for mitigation or remission. *See id. See also Walker v. United States,* 438 F.Supp. 251, 257 (S.D.Ga. 1977) (remission by return of property to chattel mortgage holder upon payment of the difference in appraisal value and equity interest is not a denial of due process because lien holder's position is the same as before seizure). *Accord, United States v. One Clipper Bow Ketch Niskee,* 548 F.2d 8, 12 (1st Cir.1977) (innocent lienholder's only recourse is to pursue the remission procedure). *But see United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor,"* 691 F.2d 603, 608–09 (2nd Cir.1982) (pursuit of the administrative remedy in mitigation and remission is elective and not mandatory and, in any event, a district court's jurisdiction to review a claim of constitutional deprivation may not be entirely precluded because an effective remedy does not exist).

### Unreasonable Delay

■ For the first time in this motion, Claimant asserts a defense to forfeiture based upon the Government's delay in seizing the property, giving notice to Claimant, instituting forfeiture proceedings and notifying Claimant thereof and moves for summary judgment thereon. This defense is based both on 19 U.S.C. § 1604 and on the constitutional guarantee of procedural due process under the Fifth Amendment. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). Both address only post-seizure delays. *Id.* Thus, any delay between the criminal act and seizure in this case is irrelevant to Claimant's defense. The two-month delay between seizure and notice of same to Claimant was not unreasonable as a matter of law. Moreover, in this instance where the Claimant has no standing at this time to contest judicial forfeiture because its claim is not ripe and where Claimant's *only* recourse at this time is to pursue the administrative remission procedure, the Plaintiff's delay in initiating forfeiture is legally

irrelevant. The Court is aware that "[a] claimant need not waive his right to a prompt judicial hearing simply because he seeks the *additional* remedy of an administrative petition for mitigation." *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. at 566, 103 S.Ct. at 2013, 76 L.Ed.2d at 154 (emphasis added). However, where a claimant's *sole* initial remedy is through the remission procedure, as here, it is impossible for Claimant to show any prejudice occasioned by the Government's delay in instituting judicial forfeiture proceedings and Claimant's own failure to seek remission or mitigation is, under the circumstances, the cause of any failure to obtain a post-seizure hearing at a meaningful time. *Compare with United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. at 562–70, 103 S.Ct. at 2010–15, 76 L.Ed.2d at 150–155. *But cf. United States v. Von Neumann,* 474 U.S. 242, 249–50, 106 S.Ct. 610, 615, 88 L.Ed.2d 587, 595 (1986) ("remission proceedings are not necessary to a forfeiture determination, and therefore are not constitutionally required"; "the forfeiture proceeding, without more, provides the post-seizure hearing required by due process").

In summary, because Claimant's only recourse is through remission proceedings, which Claimant has not initiated, any delay by Plaintiff in initiating judicial forfeiture proceedings and providing Claimant notice thereof is legally irrelevant and Claimant cannot assert a constitutional claim or defense of denial of procedural due process predicated on such delay under these circumstances. Thus, it is unnecessary for the Court to weigh the four factors set forth in *United States v. Eight Thousand Eight Hundred and Fifty Dollars* to assess the reasonableness of the delay. Even if the Court weighs these factors, the result is the same. Although evidence relating to all four factors is not before the Court, undoubtedly because of the belatedness of the assertion of this defense, the most important factor is prejudice to the claimant. *See United States v. Eight Thousand Eight Hundred and Fifty Dol-*

*lars,* 461 U.S. at 569, 103 S.Ct. at 2014, 76 L.Ed.2d at 155. In the circumstances of this case, Claimant cannot have been prejudiced in any way by the delay in instituting judicial forfeiture. And the two-month delay in notifying Claimant of the seizure is not unreasonable as a matter of law; it does not trigger the due process balancing test. *See id.* at 565, 103 S.Ct. at 2012, 76 L.Ed.2d at 153.

### Conclusion

The undisputed facts herein, *see* Stipulation of Facts at ¶ 1, establish probable cause for the seizure of Defendant vehicle and the Plaintiff's entitlement to forfeiture unless Claimant establishes that the property is not subject to forfeiture or a defense. *See* 19 U.S.C. § 1615; *United States v. Little Al,* 712 F.2d 133, 136 (5th Cir.1983). Although Claimant does not now have standing to assert its proffered "innocent owner's defense" to forfeiture because its Constitutional "claim" is not ripe, Claimant not having pursued the remission procedure, Claimant may acquire standing and its claim may ripen, following completion of the remission process, depending upon the outcome thereof. Depending upon the outcome of the remission process, the Court may be compelled to recognize an innocent owner's defense to avoid a constitutional infirmity in Section 881(a)(4) even when considered in conjunction with the statutes governing remission and mitigation. Claimant has requested that the Court defer entry of judgment herein to allow Claimant an opportunity to file a petition for remission. Due to the unique posture of this case, the Court concludes that deferral of entry of judgment is appropriate.

Claimant's motion for summary judgment on its defense of unreasonable delay is denied. Plaintiff's and Claimant's motions are otherwise held in abeyance pending completion of the remission process.

IT IS SO ORDERED.